UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KELLY A. EMANUEL, as the Executrix of the
Estate of Francis "Boomer" Cleary,

                Plaintiff,

     v.

STEVEN C. SIMON, M.D., et al.,

                Defendants.

DECISION & ORDER

03-CV-6479T

**PRELIMINARY STATEMENT**

By order dated September 20, 2004, the above-captioned matter has been referred to the undersigned for the supervision of pre-trial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(A) and (B). (Docket # 19). Asserting diversity of citizenship between the parties, plaintiff Kelly A. Emanuel, as the executrix of the estate of Francis "Boomer" Cleary, has filed this medical malpractice suit alleging that defendants provided Cleary with negligent medical treatment that ultimately resulted in his death. (Docket # 5).

According to the Amended Complaint, on November 20, 2001, defendant Steven Simon, M.D., performed bariatric surgery (gastric-bypass surgery) on Cleary. The surgery was conducted at the Robert Packer Hospital in Pennsylvania. (Docket # 5). There were no apparent complications during the surgery, and the records reflect that Cleary "tolerated the procedure 'well.'" (Docket # 5 at ¶ 25). Plaintiff alleges, however, that Simon failed to visit Cleary following the surgery, instead entrusting his post-operative care to defendant physicians Rajesh

Geria, Kahaja Moinuddeen, Nandhini Veerargahavan, Richard Damian, Kamlesh Vyas and John Doe. (Docket # 5 at ¶ 27). Cleary's medical condition deteriorated in the days following his surgery, and defendants allegedly failed to properly evaluate and treat him during that time. As a result of defendants' negligence, plaintiff maintains, Cleary's condition continued to worsen until he died on November 26, 2001. (Docket # 5 at ¶¶ 34-35).

During the course of this litigation, plaintiff has served various discovery demands upon defendants, requesting, among other things, personnel files, resident evaluations and documents relating to any "mortality/morbidity conference" or other peer review meetings conducted in relation to Cleary's death (referred to herein as "peer review material"). When defendants objected to these requests, plaintiff filed the instant motion.[1] Rather than move to compel the desired documents, however, plaintiff has requested "[a]n [o]rder [s]triking the [d]efendants' Answers, deeming all issues of fact resolved in favor of the [p]laintiffs, and precluding the [d]efendants from offering any evidence at the trial of this matter." (Docket # 29).

The parties generally agree that the discoverability of the peer review material depends upon whether New York or Pennsylvania law controls. Defendants maintain that Pennsylvania law controls because the alleged tort occurred in Pennsylvania. Plaintiff counters that "special circumstances" exists to warrant application of New York law. If Pennsylvania law

---

[1] The motion as originally filed identified numerous other requests the responses to which the plaintiff believed were inadequate. Since that time, those requests – other than the material described above (*see* Docket # 29 at ¶¶ 32-34, 38 for a specific description of the discovery demands still at issue) – have either been resolved by the parties or ruled upon by the Court at oral argument. With respect to the issue of the discoverability of requested personnel files, this Court ordered, at oral argument, that the defendants prepare an index of documents contained in those personnel files so that plaintiff could identify which documents she desired produced. According to correspondence received by the Court, those indices have been produced, and plaintiff has identified the documents she seeks. Other than evaluations that may be covered by a peer review privilege under Pennsylvania or New York law, those documents have apparently been produced or their production has been agreed to by the parties.

were applied, discoverability of the material would be governed by that state's Peer Review Protection Act, which provides protection from discovery in a civil action of proceedings and records of a medical review committee.  63 Pa. Stat. Ann. § 425.1, *et. seq.*  If New York law were applied, discoverability would be governed by provisions of the New York Education Law and Public Health Law, which, while providing some protection for such materials, permits discovery of statements made by any person in attendance at a peer review meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting.  New York Educ. Law § 6527(3); New York Pub. Health Law § 2805-m(2).

       The Court agrees with the parties that the first step in resolving the pending discovery dispute is to determine whether Pennsylvania or New York law controls.  Once that decision is made, defendants must then respond to the outstanding discovery requests by producing any responsive, non-privileged material they may have and by identifying under Rule 26(b)(5) of the Federal Rules of Civil Procedure any privileged material they seek to withhold.  Any disputes concerning the propriety of such withholding shall be raised promptly with this Court.

       The following constitutes this Court's decision and order on the choice of law question.

## **DISCUSSION**

       As stated above, jurisdiction over this matter is conferred upon this Court based upon the diversity of citizenship between the parties under 28 U.S.C. § 1332.  That statute provides:

3

> [d]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States.

28 U.S.C. § 1332(a)(1). According to the Amended Complaint, Cleary, at the time of his passing, was a citizen of New York.[2] (Docket # 5 at ¶ 3). At that time, each of the individually named defendants was licensed to practice medicine in the Commonwealth of Pennsylvania and was employed "or in the service" of the Guthrie Clinic, Ltd. or the Robert Packer Hospital. (Docket # 5 at ¶¶ 5, 8-13, 16). In addition, both the Guthrie Clinic and the Robert Packer Hospital are foreign corporations, duly organized and existing under the laws of the Commonwealth of Pennsylvania, which have their principal offices in Pennsylvania.[3] (Docket # 5 at ¶¶ 17, 18). Finally, plaintiff asserts that the amount in controversy exceeds the $75,000 jurisdictional limit. (Docket # 5 at ¶¶ 2, 40, 43 and 50).

       The law is well-settled that in cases arising under diversity jurisdiction, the court must apply federal procedural law and the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Thus, in this matter, the Court must apply New York's choice of law rules. *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) (citing *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 108-09 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)), *cert. denied*, 526 U.S. 1065 (1999).

       Under New York law, courts generally follow a *lex loci delicti* rule – that is, they apply the law of the jurisdiction in which the injury occurred (here, Pennsylvania) unless "special

---

[2] 28 U.S.C. § 1332(c)(2) provides that the executrix of an estate "shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2).

[3] 28 U.S.C. § 1332(c)(1) provides that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

circumstances" exist to justify departure from that general rule.  *See Bader v. Purdom*, 841 F.2d 38, 40 (2d Cir. 1988) (citing *Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972)).  In determining whether such special circumstances exist in cases involving tortious conduct that occurred in another state, courts consider whether the non-citizens had significant or substantial contacts with New York and whether adherence to the *lex loci delicti* rule would counteract a strong public policy interest of New York State.  *See, e.g.*, *id.*; *Scharfman v. National Jewish Hosp. and Research Ctr.*, 122 A.D.2d 939, 940 (N.Y. App. Div. 1986) ("the courts must apply the law of the jurisdiction which 'because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation'") (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963)).

In her original motion papers, plaintiff asserted that defendants Guthrie Clinic, Ltd., and Robert Packer Hospital (where the individual defendants were employed) were residents of Pennsylvania, but advertised and solicited business in the State of New York.  According to plaintiff, these activities were sufficient to invoke the special circumstances doctrine warranting application of New York substantive law, and thereby to permit the discovery of certain peer review material that would be privileged under Pennsylvania law.  (Docket # 35 at ¶ 6).  Plaintiff's allegations were unsupported, however, by any specific factual assertions describing activities or conduct undertaken by defendants in New York.  Indeed, those allegations remain unsupported despite permission having been granted for plaintiff to file a

post-argument submission to further develop its conclusory allegations.[4]

Urging the Court to find special circumstances here, plaintiff relies principally upon *Scharfman v. National Jewish Hosp. and Research Ctr.*, 122 A.D.2d at 940 (N.Y. App. Div. 1986), and *Rakaric v. Croatian Cultural Club*, 76 A.D.2d 619 (N.Y. App. Div. 1980). I conclude, however, that neither case compels the result plaintiff seeks.

In *Scharfman*, the plaintiff, a resident of New York, suffered brain damage allegedly as the result of treatment with experimental drugs at the defendant National Jewish Hospital and Research Center, located in Denver, Colorado. On the plaintiff's behalf, his father filed a personal injury suit in New York against the hospital. The defendant moved to dismiss the derivative claim pursuant to a Colorado statute that immunized hospitals from liability based solely upon the negligence of its physicians. The plaintiff opposed the motion and argued that New York law should apply because the defendant, a citizen of Colorado, operated an office in New York to screen potential patients for services in Colorado. The court determined that New York substantive law was applicable because the defendant had significant contacts with New York and because "New York has a significant interest in protecting its residents from Colorado's hospital quasi-immunity law which would bar recovery." *Id.* at 941.

The court reached a similar result in *Rakaric v. Croatian Cultural Club*, 76 A.D.2d 619 (App. Div. 1980). In *Rakaric*, the plaintiff, a resident of New York, was injured in New Jersey while performing volunteer work for the benefit of the defendant cultural club. The

---

[4] As to defendant Robert Packer Hospital, plaintiff has alleged nothing additional in is post-argument affidavit. As to defendant Guthrie Clinic, plaintiff accepts counsel's representation that it is not authorized to do business in New York; rather, a separate and distinct corporation known as Guthrie Medical Group, P.C., does business in New York. (Docket # 39 at ¶ 2; *see also* Docket # 40). Plaintiff has put forward no facts, however, to demonstrate that such an interrelationship exists between the entities that their separate corporate identities should be disregarded for purposes of this litigation.

cultural club, a New Jersey Corporation, owned the property in New Jersey on which the plaintiff was injured. Plaintiff had been solicited to perform volunteer work on the property by the pastor of his New York City church, who was on the board of directors of the defendant cultural club; in addition, the club "function[ed] in close association with, and in furtherance of the religious and beneficent purposes" of the church. *Rakaric*, 76 A.D.2d at 620-21. The plaintiff filed suit in New York, and the defendant asserted an affirmative defense of charitable immunity under New Jersey law. The court dismissed the affirmative defense, explaining that "[t]he prevalence of the greater number of contacts with New York in the instant matter, coupled with the alternative of having to apply a rejected and archaic principal of charitable immunity under which an infant resident of New York will be left without legal recourse, requires that the rule of the situs likewise be denied here." *Id.* at 633.

In the case at bar, plaintiff has failed to present the Court with specific evidence to demonstrate the existence of substantial contacts between defendants and the State of New York. Moreover, unlike the cases discussed above, application of the *lex loci delicti* rule here will not preclude an otherwise viable claim; rather, at most, it will protect certain peer review documents from discovery – a consequence that can hardly be said to offend such a strong public policy of New York as to warrant departure from the general *lex loci delicti* choice of law rule. *See Bader v. Purdom*, 841 F.2d at 40 ("the party seeking to invoke the public policy doctrine has the 'heavy burden' of showing 'that to enforce the foreign law would violate some fundamental principle of justice, some prevalent conception of good morals, [or] some deep-rooted tradition of the common weal' as expressed in New York's Constitution, statutes and judicial decisions") (quoting *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 202 (1985)). Accordingly, I find

7

that under New York's choice of law rules, the appropriate substantive law to be applied in this matter is that of Pennsylvania.

## CONCLUSION

For the foregoing reasons, it is my determination that Pennsylvania substantive law shall be applied in this matter. Plaintiff's motion to strike defendants' pleadings and to preclude defendants from offering evidence (Docket # 29) is **DENIED**. Within fourteen (14) days of this Decision and Order, defendants are directed to produce any non-privileged material responsive to the requests, as well as to produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

**IT IS SO ORDERED.**

                                        *s/Marian W. Payson*
                                        MARIAN W. PAYSON
                                      United States Magistrate Judge

Dated: Rochester, New York
        May  16 , 2006.